## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

GINA SOLOMON,

     Plaintiff,

v.

                                   CASE NO:

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC, d/b/a COMCAST
BUSINESS,

     Defendant.

_____/

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

**COMES NOW** the Plaintiff, Gina Solomon, by and through her undersigned counsel, and, by way of this Complaint, seeks relief against Defendant Comcast Cable Communications Management, LLC d/b/a Comcast Business ("Comcast"), for violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); the Family and Medical Leave Act of 1993, 29 U.S.C. §825 ("FMLA"); the Florida Civil Rights Act of 1992, Florida Statutes §§ 760.01 ("FCRA") and for Breach of Contract for failure to pay wages. In support thereof, Plaintiff states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, Gina Solomon ("Plaintiff" or "Ms. Solomon") is an adult female citizen and resident of the City of Jacksonville, Duval County, Florida.

2.      Defendant Cable Communications Management, LLC d/b/a Comcast Business ("Comcast" or "Defendant") is a limited liability company with its headquarters in Pennsylvania and conducts Business in the City of Jacksonville, Duval County, Florida. Defendant is, and has been a covered employer within the meaning of the ADA, the FCRA, and the FMLA.

3.      Plaintiff was a covered employee of the defendant within the meaning of the ADA, the FCRA, and the FMLA and worked for Defendant at its location in Duval County Florida, at 5916 Richard Street, Jacksonville, Florida 32216.

4.      This court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367, 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e (5)(f)(3).

5.      A substantial part of the acts complained of herein occurred in Jacksonville, Duval County, Florida. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

2

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

6.     Plaintiff worked for Defendant as a Senior Business Account executive from on or about March 26, 2018 until her constructive discharge on or about January 28, 2022.

7.     In the course of Plaintiff's employment with Defendant, Plaintiff and Defendant executed Compensations plans, which, subject to applicable laws, govern the payment of commissions to Plaintiff for products and services Plaintiff sold on behalf of Defendant.

8.     At all times relevant herein, Ms. Solomon was qualified for her position and was able to satisfactorily perform all of the essential functions of her job with or without accommodation.

9.     At all times relevant hereto, Glory Faunce ("Ms. Faunce") was an employee and agent for Comcast, acting directly and/or indirectly in the interest of Comcast.  Specifically, Ms. Faunce was employed as Director of North Florida, Tallahassee and Central Florida Regions, and was a supervisor over Plaintiff.

10.     At all times relevant hereto, Matthew Wray ("Mr. Wray") was an employee and agent for Comcast, acting directly and/or indirectly in the interest of Comcast, and was employed as a manager at Comcast.

11.    At all times relevant hereto, Rich Rollins ("Mr. Rollins") was an employee and agent for Comcast, acting directly and/or indirectly in the interest of Comcast, and was employed as Comcast's Vice President for the Florida Region.

12.    At all times relevant hereto, Shawn Johnson ("Ms. Johnson") was an employee and agent for Comcast, acting directly and/or indirectly in the interest of Comcast, and was employed as Comcast's Vice President of Finance.

13.    While working for Defendant, Plaintiff's wages included a base salary and commissions earned through the sale of services and products on behalf of Defendant. Commissions was expected to be the greater part of Plaintiff's pay.

14.    In or about January 2021, Ms. Faunce interfered with and prevented Plaintiff from completing sales without a legitimate reason, including but not limited to, sales to Corporate Suite Shoppe, Stay Stress Free, and Big Brothers Big Sisters, by improperly withholding her approval, thereby costing Plaintiff the opportunity to earn commissions on the sales.  This occurred soon after Ms. Faunce had begun to oversee sales territory that Plaintiff was involved with for Defendant.

15.    As a result of unwarranted interference with Plaintiff's sales, Plaintiff complained to Ms. Faunce about the lost commissions due to her interference with the sales. In response, Ms. Faunce accused Plaintiff of being unprofessional and told Plaintiff not to call her again. Ms. Faunce continued to interfere with Plaintiff's sales,

costing Plaintiff additional loss of commission and interfering with Plaintiff's ability to meet her sale goals.

16.     Additionally, Comcast's Senior Manager of Talent Acquisition, Jon Lome, told Plaintiff in early 2021 that even though Plaintiff had been performing well and was qualified for a manager position it was not a good idea to apply, because as a manager Plaintiff would have to report directly to Ms. Faunce.

17.     Ms. Faunce's action caused Plaintiff to begin experiencing heath issues. In February 2021, Plaintiff sought the counsel of a medical professional who diagnosed Plaintiff with insomnia, informed Plaintiff that insomnia was a symptom of anxiety and prescribed Plaintiff medication used to treat anxiety.

18.     On or about February 2021, Plaintiff made numerous complaints to Defendant's Human Resources Department that Ms. Faunce was unfairly interfering with Plaintiff's professional goals and ability to earn commissions. Defendant did not take any step to curtail Ms. Faunce's behavior, resulting in Ms. Faunce continuing to harass Plaintiff by, among other things, decreasing Plaintiff's sale territory.

19.     On or about April 2021, Plaintiff observed that her wages were negatively adjusted and raised concerns to several individuals including Ms. Faunce and Defendant's Human Resources Department personnel regarding unpaid commissions owed to her for sale of products and services she generated on behalf

of Comcast.  At this time, Plaintiff asked Ms. Faunce and other Comcast leaders for payment of her earned wages of approximately $18,000 in unpaid commissions.

20.    As a direct result of Plaintiff's complaints concerning her unpaid wages, Defendant through Ms. Faunce and other Comcast leaders began to subject Plaintiff to demeaning comments.

21.    Specifically, on or about April 2021, during a meeting with Ms. Johnson concerning the payment of Plaintiff's commissions, both Ms. Faunce and Ms. Johnson continuously interrupted Plaintiff and accused Plaintiff of gossiping. Ms. Johnson also told Plaintiff in sum and substance, that Comcast would not pay Plaintiff the money she was owed, and that despite that Plaintiff should be fine to pay her bills for the month.

22.    The work environment created by Defendant caused Plaintiff's health to further deteriorate. On or about May 2021, Plaintiff sought the help of another health professional who diagnosed Plaintiff with heart palpitations.

23.    Plaintiff made several complaints to Defendant through Defendant's Human Resources Department and through Ms. Faunce that the hostile work environment created by Defendant caused Plaintiff to suffer severe health issues; including but not limited to May 17 2021, when Plaintiff informed Defendant's Human Resources Department that Ms. Faunce's actions were affecting Plaintiff's

mental health. Defendant took no action to remedy the hostile work environment to which Plaintiff was subjected.

24.   On or about October 2021, Plaintiff was diagnosed by a medical professional with severe anxiety and depression due to the pervasive, intolerable, and discriminatory environment created by Defendant through the actions or Ms. Faunce and other leaders at Comcast. Accordingly, Plaintiff's medical provider recommended that Plaintiff take a medical leave of absence.

25.   On or about October 22, 2021, based on the medical professional's recommendation, Plaintiff sought short-term disability leave due to her diagnosed disability by submitting an application to Comcast's Human Resources Department. Even though Plaintiff met all eligibility requirements for short-term disability leave, Comcast denied Plaintiff's application on or about November 3, 2021 and again on or about November 11, 2021.  Comcast denied Plaintiff's request for medical leave because the health care provider's report identified the constant bullying and workplace harassment Plaintiff experienced at Comcast as the cause of her disability. This caused increased stress and anxiety to Plaintiff.

26.   Comcast finally approved Plaintiff's request for leave on November 17, 2021, only after the healthcare provider submitted an amended report, which did not specifically identify the hostile work environment at Comcast as the cause of Plaintiff's disability.

27.    After Plaintiff's submission of her application for medical leave and before Defendant's approval of her request for leave, Ms. Faunce took further adverse action against Plaintiff because of her disability. Specifically, between November 3, 2021 and November 17, 2021, Ms. Faunce cancelled some of Plaintiff's sale orders, removed Plaintiff's name as the listed sales representative on her accounts and listed and credited other non-disabled sales representatives who did not participate in the acquisition of the accounts as the sales representative on the accounts. This resulted in further loss of compensation to Plaintiff for sale orders that Plaintiff secured.

28.    In or about November and December 2021, while Plaintiff was on qualified medical leave, Ms. Faunce removed several accounts from Plaintiff's book of business, which Plaintiff had already sold, in order to prevent Plaintiff from getting commissions for the sold projects upon the projects' installation. This was done by Ms. Faunce even though there was no need to reassign the projects. Additionally. Ms. Faunce reassigned all of Plaintiff's leads, even though Plaintiff's leads were protected from reassignment per Comcast policies.

29.    In or about December 2021 and early January, 2022, upon Plaintiff's return to the work from medical leave, Ms. Faunce intensified her campaign of actions against Plaintiff because of Plaintiff's disability and because Plaintiff took qualified leave allowed pursuant to the FMLA. Ms. Faunce's adverse actions

included, but were not limited to, assigning Plaintiff to less profitable sales territories thereby reducing Plaintiff's income, and only assigning Plaintiff to one zip code while she assigned other sales representatives to at least five zip codes; removing Plaintiff from her Jacksonville team without prior warning and assigning Plaintiff to a manager in Tallahassee; ignoring plaintiff's request for additional support; issuing a verbal corrective action to Plaintiff, citing performance concerns; and preventing Plaintiff from getting promotions. All of these actions by Ms. Faunce reduced Plaintiff's income and potential for income at Comcast.

30.     On or about January 2022, Plaintiff also made complaints concerning the treatment and hostile work environment she was subjected to by Ms. Faunce, but Defendant took no action to correct the work environment to which Plaintiff was subjected.

31.     Specifically, on January 3, 2022, Plaintiff voiced concerns to Defendant's Human Resources Department that Ms. Faunce chose to administer a verbal Covid-19 screening, which required the divulgence of personal medical information rather than simply sending Plaintiff a link to the online questionnaire that could have been completed using any electronic device. Ms. Faunce used the fact that Plaintiff did not have access to her work cell phone upon her return from qualified leave of absence as a pretext to issue the verbal screening, in order to

further harass Plaintiff because of Plaintiff's disability and because Plaintiff took a medical leave of absence.

32.    In January 2022, during a meeting with Ms. Faunce, Plaintiff raised concerns about the reassignment of all of Plaintiff's leads while Plaintiff was out on medical leave, within the Comcast protection period. Ms. Faunce did not indicate that any of Plaintiff's leads needed immediate attention in Plaintiff's absence, and instead informed Plaintiff, in sum and substance, that this was a result of Plaintiff going on medical leave.

33.    Plaintiff further raised concerns regarding Ms. Faunce removing her from her Jacksonville team and further restricting her sales territory. Instead of rectifying the hostile work environment to which Plaintiff was subjected, Defendant ratified Ms. Faunce's conduct by approving Ms. Faunce's unsupported corrective actions against Plaintiff and denying Plaintiff promotions.

34.    The harassing work environment created by Defendant through Ms. Faunce and others forced the involuntary departure of Plaintiff from employment with Comcast. Accordingly, on January 28, 2022, Plaintiff was forced to leave her position at Comcast due to the intolerable environment perpetrated against Plaintiff by and through Defendant's management due to Plaintiff's disability and her medical leave.

35.     Following Plaintiff's departure from Comcast, Plaintiff became employed by a new company.  Upon learning of Plaintiff's new employment with TelAdvocate Communications, Ms. Faunce and Mr. Rollins began to disparage Plaintiff to her customers in order to interfere with her business relationships and with her new employment.

36.     Specifically, in or about February 2022, Ms. Faunce and Mr. Rollins contacted Plaintiff's new employer and customers and told them in sum and substance not to do business with Plaintiff because Plaintiff is "a scam." Ms. Faunce and Mr. Rollins also initiated contact with Plaintiff's new manager at TelAdvocate Communications and told Plaintiff's manager in sum and substance that Plaintiff left Comcast on bad terms.

37.     In or about March 2022, Plaintiff attended the Players Championship ("TPC") in Ponte Vedra, Florida on behalf of her employer, TelAdvocate Communications. At a private suite, to which Comcast invited TelAdvocate Communications, Mr. Wray and another Comcast leader, John Schuchart, who were present in the suite walked out upon Plaintiff's arrival. A Comcast employee informed Plaintiff that Comcast leaders instructed the employees not to associate with Plaintiff because Plaintiff left Comcast on bad terms. The treatment to which Plaintiff was subjected based on the environment created by Comcast at the TPC

private suite caused Plaintiff and her colleague to leave the event earlier than planned.

38.     Following Plaintiff's attendance at TPC, Mr. Rollins and Ms. Faunce continued to disparage Plaintiff and continued interference with her business relations as set forth herein.  This treatment caused the involuntary termination of Plaintiff by TelAdvocate Communications on or about June 29, 2022.

## ADMINISTRATIVE PREREQUISITES

39.     Plaintiff timely filed a Charge of Discrimination (the "Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") for disability discrimination and retaliation and hostile work environment (referred to herein as the "charge"), and the charge was cross-filed with the Florida Commission of Human Relations pursuant to the FCRA.

40.     Subsequently, the EEOC issued a notice of right to sue to plaintiff. Plaintiff has filed this Complaint within 90 days of her receipt of the notice of right to sue and after 180 days following receipt by the Florida Commission on Human Relations.

41.     All administrative prerequisites, if any, have been met for each claim brought in this Complaint, and each such claim is timely brought.

## COUNT I
## Claims against Defendant for Disability Discrimination and Hostile Work Environment in Violation of 42 USC §§12101 et seq.

42.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 41 above as though set forth fully herein.

43.     Plaintiff suffers from impairments that substantially limit one or more of her major life activities. Therefore, Plaintiff has a disability.

44.     During her employment with Defendant, Plaintiff was a qualified person with a disability in that she could perform all of the essential functions of her job with or without accommodation.

45.     At all times during Plaintiff's employment with Defendant, Plaintiff performed her job in a manner which should have met Defendant's reasonable expectations.

46.     During Plaintiff' employment with Defendant, Plaintiff was subjected to unwelcome harassment and a hostile environment on account of her disability that was sufficiently severe or pervasive to alter the terms, conditions, privileges of her employment, thereby creating an unlawful hostile environment for Plaintiff on account of her disability.

47.     Plaintiff informed Defendant of her disability prior to Defendant's harassment of Plaintiff due to her disability and prior to Defendant's termination of her through constructive discharge

48.     Defendant unlawfully discriminated against Plaintiff because of her disability and created a hostile work environment for Plaintiff, which interfered with Plaintiff's employment and created an objectively intimidating, hostile, intolerable and offensive work environment, in violation of 42 U.S.C. §§ 12101 *et seq*. Such unlawful harassment included, but was not limited to, acting in a demeaning and condescending manner toward Plaintiff, yelling at Plaintiff, hanging up the phone without warning during conversations with Plaintiff, failing to correct the harassing work environment, limiting and/or assigning Plaintiff to less profitable sales territories when other sales representatives were not limited in the same way, issuing baseless corrective actions to Plaintiff, denying Plaintiff promotions for which Plaintiff was qualified, and treating plaintiff differently than non-disabled employees.

49.     In addition, Defendant terminated Plaintiff's employment through constructive discharge because of her disability in violation of 42 U.S.C. § 12101 *et seq*.

50.     Plaintiff further provided Defendant sufficient time to remedy the intolerable and hostile work environment. However, Defendant failed to take the necessary steps to remedy the hostile work environment.

51.     Plaintiff's treatment by Defendant was different and discriminatory when compared to that of Defendants similarly situated, non-disabled employees,

including but not limited to, limiting Plaintiff's sale territories and assigning Plaintiff to less profitable territories.

52.     Plaintiff was injured and negatively affected by Defendant because of the discriminatory work environment

53.     The acts and omissions committed by Defendant were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

54.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages including but not limited to,  lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, severe anxiety, depression, embarrassment and additional health related problems justifying an award including but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant.

## COUNT II
### Claim against Defendant for Retaliation
### Violation in Violation of 42 U.S.C. §§12101 et seq.

55.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 41 above as though set forth fully herein.

56.     Plaintiff engaged in protected conduct within the meaning of the ADA when she complained of Defendant's discriminatory conduct.

57.     After and because Plaintiff engaged in this protected conduct, Defendant's agents, officials and/or employees treated her differently than similarly

situated non-disabled employees by, among other ways: failing to fully and thoroughly investigate the harassing and retaliatory behaviors of Ms. Faunce, showing Plaintiff hostility, issuing baseless corrective actions to Plaintiff, reassigning Plaintiff's book of business in order to affect her compensation and denying her promotions for which she was qualified. Defendant further retaliated against Plaintiff by interfering with new business relationships after Plaintiff's constructive discharge from Comcast, ultimately causing the involuntary termination of Plaintiff from her new position.

58.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to her career and reputation, personal humiliation, mental anguish, severe anxiety and depression, and embarrassment justifying an award including but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant.

## COUNT III
### Claim against Defendant for Disability Discrimination and Hostile Work Environment in Violation of Civil Rights Act of 1992, Florida Statutes §§ 760.01 *et seq*.

59.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 41 above as though set forth fully herein.

60.     Plaintiff suffers from impairments that substantially limit one or more of her major life activities. Therefore, Plaintiff has a disability.

16

61.     During her employment with Defendant, Plaintiff was a qualified person with a disability in that she could perform the essential functions of her job with or without accommodation.

62.     At all times during her employment with Defendant, Plaintiff performed her job in a manner, which should have met Defendant's reasonable expectations.

63.     During Plaintiff' employment with Defendant, Plaintiff was subjected to unwelcome harassment and a hostile environment on account of her disability that was sufficiently severe or pervasive to alter the terms, conditions, privileges of her employment, thereby creating an unlawful hostile environment for Plaintiff on account of her disability.

64.     Plaintiff informed Defendant of her disability prior to Defendant's harassment of Plaintiff due to her disability and Defendant's termination of Plaintiff through constructive discharge.

65.     Defendant unlawfully discriminated against Plaintiff because of her disability and created a hostile work environment for Plaintiff, which interfered with Plaintiff's employment and created an objectively intimidating, hostile, intolerable and offensive work environment, in violation of Fla. Stat. §§ 760.01 *et seq.* Such conduct included, but was not limited to, acting in a demeaning and condescending manner toward Plaintiff, yelling at Plaintiff, hanging up the phone without warning

during conversations with Plaintiff, failing to correct the harassing work environment, limiting and/or assigning Plaintiff to less profitable sales territories when other sales representatives were not limited in the same way, issuing baseless corrective actions to Plaintiff and denying Plaintiff promotions for which Plaintiff was qualified.

66.    In addition, Defendant terminated Plaintiff's employment through constructive discharge because of her disability, in violation of Fla. Sta. 760.01.

67.    Plaintiff was injured and negatively affected by Defendant because of the discriminatory work environment.

68.    Plaintiff further provided Defendant sufficient time to remedy the intolerable and hostile work environment. However, Defendant failed to take the necessary steps to remedy the hostile work environment.

69.    Plaintiff's treatment by Defendant was different and discriminatory when compared to that of Defendant's similarly situated, non-disabled employees.

70.    The acts and omissions committed by Defendant were willful, malicious and in reckless disregard of Plaintiff's protected civil rights.

71.    As a direct and proximate result of Defendant's unlawful discrimination on account of Plaintiff's disability, Plaintiff has suffered and will continue to suffer lost wages in the form of back pay and front pay, lost benefits and entitlements, damage to her career and reputation, severe anxiety and depression,

personal humiliation, mental anguish, emotional distress, loss of employment of life, and additional health related problems.

## COUNT IV
**Claim against Defendant for Retaliation in Violation of Civil Rights Act of 1992, Florida Statutes §§ 760.01 *et seq*.**

72.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 41 above as though set forth fully herein.

73.     Plaintiff engaged in protected conduct within the meaning of the FCRA when she complained of Defendant's discriminatory conduct.

74.     After and because Plaintiff engaged in this protected conduct, Defendant's agents, officials and/or employees treated her differently than similarly situated non-disabled employees by, among other ways: failing to fully and thoroughly investigate the harassing and retaliatory behaviors of Ms. Faunce, showing Plaintiff hostility, issuing baseless corrective actions to Plaintiff, reassigning Plaintiff's book of business in order to affect her compensation and denying her promotions for which she was qualified. Defendant further retaliated against Plaintiff by interfering with new business relationships after Plaintiff's constructive discharge from Comcast, ultimately causing the involuntary termination of Plaintiff from her new position.

75.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to her career and reputation,

personal humiliation, mental anguish, severe anxiety and depression, and embarrassment justifying an award including but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant.

<u>**COUNT V**</u>
**Claim against Defendant for Discriminating Against Plaintiff in Violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §825, *et seq.***

76.    Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 41 above as though set forth fully herein.

77.    Defendant violated the Family and Medical Leave Act by failing to provide Plaintiff with the same terms and conditions of employment upon her return from qualified leave.

78.    Prior to the start of her qualified leave, Plaintiff had a book of business which included numerous closed contracts from several clients which were pending installation. Furthermore, prior to leaving for qualified medical leave, Plaintiff's manager was based in Jacksonville, Florida.

79.    While Plaintiff was on medical leave, Ms. Faunce reassigned Plaintiff's closed contracts to other sales representatives, even though it was not necessary to do so; and reassigned Plaintiff's leads even though it was not necessary to do so.

80.    Upon her return from qualified leave, Plaintiff's book of business was empty, which affected Plaintiff's work and compensation. Plaintiff was forced to

devote time to start a new book of business and seek new leads, and was consequently not paid commissions on contracts that Plaintiff previously secured. Additionally, Plaintiff was removed from her normal team and assigned to a manager in Tallahassee who was not as experienced as Plaintiff's former manager and was therefore unable to provide the same level of support that Plaintiff's former manager provided, thereby subjecting Plaintiff to different working conditions. Defendant also denied Plaintiff's request for additional support, which would have helped achieve the same working conditions that existed prior to Plaintiff taking qualified leave. The lack of support affected Plaintiff's work and impacted Plaintiff's ability to earn commissions. Thus, upon Plaintiff's return from qualified medical leave, she was not restored to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment.

81.    As a direct and proximate result of Defendant's unlawful discrimination on account of Plaintiff's medical leave under the FMLA, Plaintiff has suffered and will continue to suffer lost wages in the form of back pay and front pay, lost benefits and entitlements, damage to her career and reputation, anxiety, depression, personal humiliation, mental anguish, emotional distress, loss of employment of life, and additional health related problems.

<u>COUNT VI</u>
**Claim against Defendant for Retaliation in Violation of the Family And
Medical Leave Act, 29 USC§§ 825 *et seq*.**

82.    Plaintiff hereby incorporates and re-alleges by reference herein the
allegations in Paragraphs 1 through 41 above as though set forth fully herein.

83.    Plaintiff engaged in protected activity within the meaning of the family
and medical leave act when Plaintiff opposed Defendant's failure to provide Plaintiff
with an equivalent position with the same working conditions and benefits to which
Plaintiff was entitled upon her return from qualified leave, including among other
things, removing Plaintiff from her team, assigning Plaintiff to the Tallahassee
manager and reassigning all of Plaintiff's leads.

84.    After and because of Plaintiff's opposition to Defendant's unlawful acts
under the FMLA, Defendant further retaliated against Plaintiff by, among other
things, issuing Plaintiff baseless corrective actions, denying Plaintiff promotions for
which Plaintiff was qualified,  and interfering with Plaintiff's new business relations
following her constructive discharge from Comcast.

85.    As a direct and proximate result of Defendant's unlawful retaliation on
account of Plaintiff's protected activity under the FMLA, Plaintiff has suffered and
will continue to suffer lost wages in the form of back pay and front pay, lost benefits
and entitlements, damage to her career and reputation, anxiety, depression, personal

humiliation, mental anguish, emotional distress, loss of employment of life, and additional health related problems.

## COUNT VII
### Failure to Pay Wages

86.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1 through 41 above as though set forth fully herein.

87.     Defendant promised to pay Plaintiff commissions as wages for her work, including sale of products and services on behalf of Defendant.

88.     Plaintiff, in good faith reliance upon Defendant's promise to pay commissions, performed her job in a professional and competent manner during the course of her employment with Defendant, and sold products and services on behalf of Defendant.

89.     Defendant materially breached the terms of its promise to pay Plaintiff commissions.

90.     Defendant's breach has caused damages to Plaintiff, including, but not limited to, Plaintiff's unpaid wages, and additional damages in amounts to be proven at trial.

**WHEREFORE**, Plaintiff Gina Solomon respectfully requests that this Honorable Court grant the following relief:

a) Enter judgment on behalf of Plaintiff and against Defendant on all counts herein;

b)  Award Plaintiff back pay including lost benefits and front pay;

c)  Award Plaintiff compensatory damages allowable under law;

d)  Award Plaintiff punitive damages for Defendant's willful violations;

e)  Award Plaintiff reasonable attorneys' fees, court costs, expenses, prejudgment interests, and post-judgment interest; and

f)  Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues so triable as a matter of right.

Dated:  November 14, 2022                    Respectfully Submitted,

                                            */s/Neil L. Henrichsen*
                                            Neil Henrichsen
                                            Fla. Bar No. 0111503
                                            Naphtalie Azor
                                            Fla. Bar No. 1024060
                                            HENRICHSEN LAW GROUP, PLLC
                                            301 W. Bay St., 14th Floor
                                            Jacksonville, FL 32202
                                            (904) 381-8183
                                            (904) 212-2800 (Facsimile)
                                            nhenrichsen@hslawyers.com
                                            nazor@hslawyers.com
                                            service@hslawyers.com